<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

</div>

**TYLER KYLE PITCHFORD,** an
individual person,
        **Plaintiff,**

     **v.**                             **Case No.:8:12-cv-01897-MSS-TGW**

**AELITIS, SAS,** a French company,
**AZUREUS, INC.,** a California corporation,
**AZUREUS SOFTWARE, INC.,** a Delaware
corporation, **VUZE, INC.,** a Delaware
corporation, **VUZE, LLC.,** a Delaware limited
liability company, **VUZE MERGER**
**CORPORATION,** a Delaware corporation,
        **Defendants.**
_____/

<div align="center">

**PLAINTIFF'S RESPONSE TO DEFENDANTS AZUREUS SOFTWARE, INC., AND**
**VUZE LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND 12(B)(3)**
**AND INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

</div>

     Plaintiff filed suit against Defendants alleging that Defendants: infringed on

Plaintiff's copyrighted material(s); breached an agreement with Plaintiff pursuant to the

GNU Public License Version 2 (GPLv2); improperly filed, transferred, possessed, and

utilized Plaintiff's trademarked material(s); violated the Lanham Act; infringed on Plaintiff's

common law trademark rights; and were unjustly enriched (Doc. 1).  Defendants Azureus

Software, Inc., and Vuze LLC., first filed a Motion Pursuant to Fed. R. Civ. P. Rule 11

seeking sanctions claiming the existence of an exculpatory contract (Aelitis Agreement)

(Doc. 13).

Plaintiff responded explaining that Defendants' motion was filed for improper purposes because it essentially sought to test Defendants' possible affirmative defenses, because it improperly sought discovery information and access to Plaintiff's privileged information, because Defendant relied upon a foreign contract (Aelitis Agreement) that Plaintiff contended possessed no bearing on Plaintiff's lawsuit, and because Defendants failed to cite binding precedent upon this Court that completely nullified Defendants' trademark arguments. (Doc. 17).

Exploiting Plaintiff's limited responses, Defendants minimally revised their arguments and filed this motion seeking to dismiss Plaintiff's case under Federal Rule of Civil Procedure 12 (Rule 12). Specifically, Defendants based this motion on subsections (b)(6) and (b)(3), alleging that Plaintiff has failed to state a claim upon which relief can be granted and that Plaintiff has filed suit in an improper venue. But, even revised, Defendants' latest motion still suffers from many of the same problems as their first Rule 11 motion. Defendants' motion again improperly relies upon evidence that is neither contained, nor referenced, within the Plaintiff's well-pleaded complaint. And, Defendants' persist in failing to inform this Court of binding precedent and case law rejecting their arguments while also failing to accurately explain the facts of this case.

## ARGUMENT

### *Defendants' motion relies upon evidence beyond the scope of Plaintiff's complaint, and must be denied*

When evaluating a motion to dismiss, generally, courts cannot look beyond the four corners of a plaintiff's complaint. *See Rickman* v. *Precisionaire, Inc.,* 902 F. Supp. 232, 233 (M.D. Fla. 1995). As explained by Rule 12(d), when a party relies upon "matters outside the

pleadings [that] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Additionally, the rule clarifies that when a motion to dismiss is converted to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Here, Defendants continue to rely upon an unauthenticated document—clearly missing parts of the top and bottom margins—which Defendants allege transfers all of Plaintiff's intellectual-property rights to Defendant Aelitis SAS on April 12, 2004 (Aelitis Agreement). Additionally, Defendants attached an affidavit from a Gilles BianRosa asserting numerous facts outside the four-corners of Plaintiff's complaint, and alleging that Mr. BianRosa has personal knowledge of the authenticity of the Aelitis Agreement. Importantly, this affidavit alone is sufficient to dispense with Defendants' motion, until such time as the parties have been allowed to engage in meaningful discovery in order to "present all the material that is pertinent to the motion." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F. 3d 1292, 1297-98 (noting that when a Rule 12(b)(6) motion relies upon an affidavit, the court should treat the matter as a motion for summary judgment and allow the parties to engage in discovery); *see also Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery.").

Trying to escape from engaging with Plaintiff in meaningful discovery, Defendants argue that their assertion of this Aelitis Agreement is appropriate for this Court's consideration under the incorporation-by-reference doctrine. (Doc. 18 at 2) In order to justify their argument, Defendants incorrectly conflated the Aelitis Agreement with the

agreement reached between Defendant Azureus, Inc., and Plaintiff that was in fact incorporated and referenced in paragraphs 32, 35, and 52 of the complaint (Azureus Agreement) (Doc. 1, ¶¶32, 35, 52).  Notably, the Aelitis Agreement relied upon by Defendants is wholly separate and apart from the Azureus Agreement referenced and incorporated by the Plaintiff in his complaint.  Defendants now argue that Plaintiff has somehow incorporated the Aelitis Agreement into Plaintiff's complaint. But, that is not how the incorporation by reference doctrine functions.  And, regardless of Defendants' assertions, there can be absolutely no argument that Plainitff did not incorporate Mr. BianRosa's affidavit into the Plaintiff's complaint.

To rely upon the incorporation by reference doctrine, a party must satisfy two elements.  *See Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005).  First, the party must show that the document's contents are alleged in the plaintiff's complaint, and that the document is "central" to the plaintiff's claims.  *Id*.  And second, the party must show that "no party questions those contents" of the document in question. *Id*.  Defendants have failed to establish either element.

With regard to the first element, Defendants absolutely failed to cite a single paragraph of Plaintiff's complaint referencing the Aelitis Agreement.  Indeed, Defendants even candidly admit that: "Pitchford's Complaint . . . omitted all reference to [the] Agreement, and purports to state only U.S. law claims," (Doc 18 at 8). It's axiomatic that a document *admittedly* not even referenced within Plaintiff's complaint cannot somehow become incorporated by reference, much less "central" to Plaintiff's claims.

As for the doctrine's second element, just as with their Rule 11 motion, Defendants provided no evidence whatsoever that the agreement is authentic or that no party questions the document's contents. Instead, Defendants' have provided only an affidavit that goes well beyond the confines of Plaintiff's complaint and generally asserts that Mr. BianRosa has personal knowledge of the Aelitis Agreement, and that it is a "true and correct copy of the April 12, 2004[,] Aelitis Contributor Agreement . . .." Plaintiff disputes these facts, as well as the contents of Defendants' alleged document.

Plaintiff's complaint alleged that Defendant Aelitis was formed in France on or about April 12, 2004 (Doc. 1, at ¶45). Interestingly enough, Defendants argue that on April 12, 2004 – the exact same day Aelitis came into being – that Plaintiff, who lived and worked in Florida at the time, somehow attended a meeting with Mr. BianRosa and the other Aelitis founders in France, and transferred all of his intellectual property that he ever had in regards to the Azureus project. Of course, Defendants have provided no evidence to support any such assertion, or, indeed, any evidence at all regarding how this agreement supposedly came into existence. Instead, Defendants have filed nothing more than a statement from Aelitis' Chief Executive Officer, Mr. BianRosa, in which he states that he has first-hand knowledge of this document, despite the fact that Mr. BianRosa's signature appears nowhere on the alleged document (Doc. 18-2).

Accordingly, both elements of the incorporated-by-reference doctrine fail because Defendants both candidly admit that Plaintiff never incorporated or referenced the Aelitis Agreement within his complaint and because at least one party questions the contents of the Aelitis Agreement. As Defendants have gone far beyond the four corners of the Plaintiff's

complaint, this Court should either exclude Defendants purported evidence before considering their motion, or treat Defendants' motion as a Rule 56 motion for summary judgment and delay ruling on Defendants motion until the parties have had an opportunity to engage in meaningful discovery in order to allow Plaintiff to "present all the material that is pertinent to the motion."

Should this Court however disagree with Plaintiff that the Aelitis Agreement should be excluded before consideration, or that Plaintiff should be given an opportunity to engage in discovery with Defendants before issuing its order, Plaintiff responds, to the extent possible, with the following arguments:

### *Standard of review for a motion to dismiss.*

"The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Scelta* v. *Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1334 (M.D. Fla. 1999) (quoting *Ancata* v. *Prison Health Serv. Inc.,* 769 F. 2d 700, 703 (11th Cir. 1985)). A court should not dismiss a plaintiff's complaint unless it is, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley* v. *Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 101-02 (1957)). Additionally, "[a] court must accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.*; *see also Scheuer* v. *Rhodes*, 416 U.S. 232 (1974), *Howry* v. *Nisus, Inc.,* 910 F. Supp. 576 (M.D. Fla. 1995). And, as explained above, when "deciding a motion to dismiss, the court can only examine the four corners of the complaint." *Scelta* 57 F. Supp. 2d at 1334.

***The Aelitis Agreement has no bearing on this case, and does not foreclose any of
Plaintiff's claims***

As an initial matter, nowhere do Defendants assert that Plaintiff's complaint, standing alone, fails to properly assert claims for copyright infringement. This alone is enough to deny Defendants' motion. Instead, Defendants rely upon facts well outside the confines of Plaintiff's complaint and argue that Plaintiff's claims are barred because he transferred all of his rights to Aelitis. As explained above, Plaintiff adamantly denies that the Aelitis Agreement was contained within the four-corners of his complaint, incorporated by reference, or even accurate. However, in the event that this Court finds the Aelitis Agreement applicable to Defendants' motion, the document has no bearing on Plaintiff's claims.

Defendants' motion paints an overly broad picture of what is, in reality, an extremely narrow agreement by the Aelitis Agreement's own terms. According to Defendants, the "fully integrated" Aelitis Agreement transferred not only the files listed within the agreement, but, instead, transferred "all Intellectual Property rights" Plaintiff owned on anything that was copyrightable, trademarkable, and, arguably, patentable too. Unfortunately, Defendant's claims are contrary to the Aelitis Agreement's explicit terms.

While making much of the "all Intellectual Property" language contained within the Aelitis Agreement, Defendant's selective quoting excludes extremely important limiting language. The agreement actually states, "The Contributor hereby transfers to Aelitis the ownership of all the Intellectual Property rights *he holds on the Contributor Modifications in the Azureus Project*." (Doc 18-2 at Article 3) (emphasis added). The agreement further

limits the scope of what it purportedly transferred to Aelitis by defining modifications as "additions to and/or deletions from the Original Code . . . ." (Doc 18-2 at §1.2.) And, as conceded by Defendants' themselves, "lest there be any doubt as to what code was" included in definition of Contributor Modifications, the agreement further clarified that: "Exhibit A lists all the Azureus Original Code files containing Contributor Modifications." (Doc 18 at 3; Doc 18-2 at §1.3.)

Thus, despite Defendants' best arguments, the Aelitis Agreement expressly limited any transfer of rights to *only* any additions or deletions that Plaintiff made to the files listed in Exhibit A. Obviously, a transfer of rights limited to just the additions and deletions to a file does not include a transfer of rights in the file itself; they're mutually exclusive concepts. And such a limited transfer certainly did not include files not even listed in Exhibit A—files such as BEncoder.java.

As previously explained in Plaintiff's response to Defendants' Rule 11 motion, Plaintiff's copyrighted code consists of three (3) unique files: BEncoder.java, BDecoder.java, and ConfigurationManager.java (Doc. 17 at 8). However, the Aelitis Agreement only references specific iterations of BDecoder.java and ConfigurationManager.java (Doc. 18-2). Nowhere does the agreement reference BEncoder.java or even the iterations of BDecoder.java or ConfigurationManager.java that are the subject of Plaintiff's copyrights clearly demonstrating that Aelitis intentionally selected exactly the additions and deletions that they wished to purchase.

And while it may seem to be an odd notion for a corporation to only purchase the additions or deletions made to files, there are many perfectly valid reasons that Aelitis may

have wished to purchase only the modifications Plaintiff's made.  Source code is not like most widgets; it's not the quantity that matters.  If Aelitis only intended to utilize the code embodied within the modifications Plaintiff contributed as listed by Exhibit A, then they could offer a much lower price for the sale of the code by excluding everything else.

In this case, the Aelitis Agreement indicates that the purchase price Aelitis offered to pay Plaintiff for his modifications was only €1.00 (one Euro).  (Doc 18-2 at Article 3) ("this transfer of ownership is made for a price of 1 euro payable two months after the signature of this agreement.").  Of course, €1.00 is hardly a reasonable offer if Defendant Aelitis intended to purchase what easily amounted to hundreds of hours of work, and potentially thousands of lines of source code.  However, if Aelitis only sought to obtain small subset of Plaintiff's code, such as only the additions and deletions that Plaintiff made that were explicitly listed in Exhibit A, then a mere €1.00 price begins to make a lot more sense.  Indeed, this logic fits the actual Aelitis Agreement that specifically identified which files were important and which files it had no use for; i.e.  intentionally excluding BEncoder.java.

Accordingly, despite Defendants' assertions, the Aelitis Agreement possesses absolutely no impact on Plaintiff's claims.  At most, the agreement indicates that Aelitis attempted to purchase a very small subset of Plaintiff's unique computer code.  Under no reading, other than one deliberately twisted in an attempt justify Defendants' arguments, does the Aelitis Agreement even suggest that it is attempting to transfer "all Intellectual Property rights" to anything that Plaintiff ever created.  Thus, even if the Court were to find the Aelitis Agreement available for consideration on Defendants' motion to dismiss, the Court should

deny Defendants' motion as the Aelitis Agreement has no impact on any of Plaintiff's claims for copyright infringement.

But, as noted above, Plaintiff admittedly disagrees with Defendant and argues that these are all fact-specific issues that are inappropriate for evaluation on a motion to dismiss before any meaningful discovery has occurred. For example, Mr. BianRosa, as a founder and Chief Executive Officer of both Aelitis and Vuze, LLC., (Doc 18-1), should have sufficient knowledge to explain why Aelitis only wished to purchase Plaintiff's modifications to certain files instead of the entire contents of the files themselves. As a founder and Chief Executive Officer, Mr. BianRosa will most certainly be able to shed light upon all the genuine issues of material fact and allow this Court to reach an accurate ruling on these issues.

### *Plaintiff properly asserted his trademark claims*

Defendants next argue that this Court should dismiss Plaintiff claims for trademark infringement. Tellingly, however, Defendants make absolutely no argument regarding Plaintiff's requests for cancellation of the marks due to the Defendants' fraudulent transfers and trademark applications. Instead, again going outside the four-corners of Plaintiff's complaint, Defendants' argue that the purported Aelitis Agreement extended well beyond its "fully integrated" bounds, and somehow also included a transfer of Plaintiff's trademark rights. Of course, as explained above, the Aelitis Agreement did no such thing. At most the agreement attempted to transfer an extremely small amount of source code. Even more telling, however, is the fact that the "fully integrated" agreement doesn't ever mention the word trademark.

Defendants also assert that "Pitchford does not dispute—in fact, he affirmatively alleges—that he licensed his purported trademark rights to Aelitis." (Doc 18 at 5). However, Plaintiff's complaint contains no such assertion, and actually expressly denies Defendants' allegations. Paragraphs 32, 35, and 52 of Plaintiff's complaint, clearly explain that Plaintiff and Azureus, Inc. (an entirely different corporation from Aelitis, Vuze, LLC, or Azureus Software, Inc.) reached an agreement whereby the Plaintiff provided a revocable license to Defendant Azureus, Inc. to utilize Plaintiff's rights in the Azureus mark for non-profit purposes under the express condition that the company comply with the terms of GPLv2 license, and differentiate any commercial enterprises from the Azureus project. "In no case did Plaintiff ever provide a revocable license for the name Azureus or the blue-frog logo to any Defendant other than Azureus, Inc." (Doc 1 at ¶ 35).

Next, Defendants resort to the same arguments raised in their Rule 11 motion that Plaintiff's claims must be dismissed because Plaintiff never sold a product in commerce. But, despite Plaintiff's citation in his response, Defendants' again failed to inform this Court of binding precedent directly rejecting Defendants' arguments. *See Planetary Motion, Inc. v. Techsplosion, Inc*. 261 F.3d 1188, 1200 (11th Cir. Fla. 2001).

As explained in Plaintiff's response to Defendants' Rule 11 motion, *Planetary Motion*, expressly rejects defendants' arguments and holds that open-source software licensed under the GPLv2, even though it is not "sold" for monetary gain, constitutes use in commerce and is eligible for trademark protection. *Id*. As explained by the 11th Circuit, "[b]y developing and distributing software under a particular mark, and taking steps to avoid ceding the Software to the public domain, [the developer] made efforts to retain ownership rights in his

Software…Competitive activity need not be fueled solely by a desire for direct monetary gain." *Id.* Of course, having yet again failed to even mention this binding precedent, Defendants also make no attempt to differentiate *Planetary Motion*, or to explain why there should be a change in the law. Instead, Defendants simply ignore precedent altogether, and argue only that Aelitis was the first entity to utilize the Azureus mark in commerce through the sale of their product.

Specifically, Defendants argue that, "[a]s Pitchford's own Complaint makes clear, it was Defendants who distributed and sold products bearing the name and logo at issue, and it was Defendants who properly registered those marks with the Patent and Trademark Office." (Doc. 18, p. 6). However, Plaintiff's complaint clearly states that he placed such marks into commerce, (Doc. 1 ¶¶43-44), and expressly alleges that Defendants' fraudulently transferred or filed their trademark applications (Doc. 1 ¶¶125-166). But more importantly, as shown by Exhibit K to Plaintiff's complaint, at the time Aelitis fraudulently registered the Azureus mark with the USPTO, even they were not selling any product. (Doc 1, Exhibit K at ¶ 12) ("Plaintiff distributes its AZUREUS software at no cost."). Indeed, as far as Plaintiff is aware, no Defendants sold any products until the year 2010—long after the dates of Defendants' trademark applications.

Finally, Defendants assert Florida's four-year statute of limitations, and the doctrine of laches. As an initial matter, Defendants' provide no citation to any case law regarding the doctrine of laches. However, "to establish laches, a defendant must demonstrate 1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.

2d 1531, 1545-46.  Defendants' have failed to establish any of the required elements.  They have not alleged a delay in the assertion of Plaintiff's arguments, that the delay was inexcusable, or that they have been prejudiced in anyway shape or form. Accordingly, Defendants' claims are foreclosed because Defendants themselves failed to satisfy any elements of the laches doctrine.

As for the statute of limitations arguments,  Defendants' cite to *Western Sizzlin' Corp.,* v. *Pinnacle Business Partners, LLC.,* 2011 WL 5878043 (M.D. Fla. Nov. 23, 2011). But the fault in Defendants' argument is that the statute of limitations begins to run from the time the plaintiff knew or should have known of the injuries.  *See Reisman* v. *General Motors Corp.,* 845 F. 2d 289, 291 (11th Cir. 1988).  Thus the proper analysis is when the statute of limitations began to run.  *Id*. Here, Plaintiff alleged that Defendant Azureus, Inc. possessed a revocable license to the Plaintiff's trademark until 2010, when Defendants' violated their agreement to comply with the terms of the Azureus Agreement governed by GPLv2.  Accordingly, Defendants' statutes of limitations arguments are mistaken, because the earliest time that Plaintiff could even have possibly raised a non-frivolous case for trademark infringement only began two (2) years ago.

Additionally, as shown by Defendants' own citation, even if the four-year statute of limitations was applicable (it was not), Defendants themselves would be equitably estopped from raising any such claim. *Western Sizzlin',  2011 WL 5878043, *3*.  "Under Florida law, equitable estoppel arises when one party lulls another party into a disadvantageous legal position." *Id*.  "The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct", and "thus functions as a shield, not a sword, and

operates against the wrongdoer, not the victim." *Id.* Here, Plaintiff's complaint establishes that any supposed delay occurred only as a direct result of Defendants lulling Plaintiff into believing that they were going to continue utilizing Plaintiff's mark under the terms of the Azureus Agreement where Plaintiff permitted only Defendant Azureus, Inc. to utilize his mark for non-profit purposes as long as it complied with the terms of the GPLv2, and clearly distinguished any corporate ventures from the open-source project.

### *Defendants were unjustly enriched as a result of impermissibly taking Plaintiff's copyrighted and trademarked materials*

Defendants next challenge Plaintiff's claims for unjust enrichment. Defendants, however, misunderstand Plaintiff's complaint. "Under Florida law, damages under the common law claim for breach of contract implied in law, also known as quasi contract or quantum meruit, are awarded on a theory of unjust enrichment." *American Honda Motor v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). The Court adopted this legal fiction, "to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Id.* (quoting *Commerce Partnership 8098 L.P. v. Equity Contracting Co.*, 695 So. 2d 383 (Fla. 4th DCA 1997).

To prove a claim of unjust enrichment in Florida requires a plaintiff to show that 1) a benefit conferred upon a defendant by the plaintiff; 2) the defendant's appreciation of such benefit; and 3) the defendant's acceptance and retention of that benefit which under the circumstances make it inequitable for the defendant to retain such benefit. *See Rionda v HSBC Bank USA, N.A.*, 2010 WL 5476725 (S.D. Fla. 2010). "The Eleventh Circuit employs a two-part test to be applied in copyright preemption cases: preemption occurs if the rights at

issue (1) fall within the 'subject matter of copyright set forth in sections 102 and 103' and (2) 'are 'equivalent to' the exclusive rights of section 106.'" *Magical Mile, Inc.,* v. *Benowitz,* 510 F. Supp. 2d 1085, 1087 (S.D. Fla. 2007) (quoting *Crow* v. *Wainwright,* 720 F. 2d 1224, 1225-6 (11th Cir. 1983)). Defendants fail to address either prong.

Here, Plaintiff asserted unjust enrichment in the event that Defendants' attempt to assert that the GPLv2 did not apply to Plaintiff's materials, or that Plaintiff and Azureus, Inc. never reached an agreement regarding the terms of usage for Plaintiff's rights to the Azureus mark after as referenced by paragraphs 32, 35, and 52 of Plaintiff's complaint, and to cover Defendants', other than Azureus, Inc., usage of Plaintiff's rights absent an express or implied contract. Thus, unlike *Briarpatch Limited, L.P., v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2nd Cir. 2004), where the parties claims relied solely upon the plaintiff's copyrights, here, Plaintiff's claims of unjust enrichment rely upon a combination of Plaintiff's trademark and copyright claims. Accordingly, under the two-prong test applied by the 11th Circuit, Plaintiff's claims are not preempted because they involve elements that do not entirely fall within the subject matter of the Copyright Act, 17 U.S.C. §§101 *et. seq.,* as set forth in sections 102 and 103, because they also rely upon the benefit conferred by Defendants' unauthorized usage of Plaintiff's trademark rights. *See also Hustlers, Inc.,* v. *Thomasson,* 253 F. Supp 2d 1285, 1293 (N.D. Ga. 2002) (explaining that unjust enrichment claims involving violations of 17 U.S.C. §106 are not preempted).

### *The Aelitis Agreement has no bearing on Plaintiff's claims, and its venue-selection clause has no application to this case*

Defendants' final argument asserts that this Court should dismiss Plaintiff's complaint under Rule 12(b)(3) because the Aelitis Agreement contains a choice of venue clause

requiring that "[a]ny litigation relating to this Agreement shall be subject to the jurisdiction of the French Courts." But, again, Defendants arguments are baseless.

First, as explained extensively throughout this response, Plaintiff made absolutely no reference to the Aelitis Agreement within his complaint, and has brought no claims regarding the Aelitis Agreement. Additionally, Plaintiff most certainly has never "concede[d] . . . his claims depend on adjudication of the terms of [the Aelitis] Agreement." (Doc. 18 at 8). Nor has Plaintiff ever "suggested that determination of this case will require this Court to interpret the terms of that Agreement under French law." (*Id.*) Instead, in response to Defendants' Rule 11 motions, Plaintiff merely pointed out that beyond attempting to rely upon an unauthenticated document that Plaintiff clearly stated had no bearing upon his case; Defendants had failed to inform this Court that their alleged agreement explicitly states that it required the application of French law.

Second, despite Defendant's desire to avoid the express terms of the Aelitis Agreement, this agreement's venue-selection clause only apply to claims "relating to" litigation over the agreement itself. Claims "relating to" the Aelitis Agreement, would require claims based upon the agreement in some way—such as a breach of contract claim targeted at the Aelitis Agreement. Here, Plaintiff has brought claims arising from U.S. Copyright law, U.S. Trademark law, violation of the GPLv2 license, and Florida state-law— not Defendants' alleged agreement. Tellingly, other than attempting to twist the express wording of Plaintiff's complaint well beyond what it actually states, Defendants offer absolutely no argument to support their assertions that Plaintiff's claims somehow "relate to" the Aelitis Agreement. Indeed, as Defendants explicitly acknowledge, that Plaintiff's claims

have no relation to the agreement, and involve "only U.S. law claims." (Doc 18 at 8).

Accordingly, Plaintiff's claims, which rely upon causes of action wholly independent of the Aelitis Agreement do not "relate to" the agreement and its venue-selection clause does not apply to Plaintiff's claims.

## CONCLUSION

Accordingly, for all of the foregoing reasons, and because there exist genuine issues of material fact, because consideration of the Plaintiff's well-pleaded facts as true within the four corners of the complaint are sufficient to sustain the causes of action, and because the Plaintiff may prove sufficient facts to support his claim(s), Plaintiff most respectfully requests that this Honorable Court deny Defendants' motion, or in the alternative, delay ruling until at least until such time as the parties have been able to engage in meaningful discovery.

**Respectfully submitted this 17th day of December 2012**

<div style="margin-left: 2in;">

/s/ Adam S. Levine
Adam S. Levine, M.D., J.D.
Florida Bar No. 78288
The Florida Legal Advocacy Group of Tampa Bay
1180 Gulf Boulevard, Suite 303
Clearwater, FL 33767
(727) 512 – 1969 [Telephone]
(866) 242 – 4946 [Facsimile]
aslevine@msn.com [E-mail]
Trial Counsel & Counsel for the Plaintiff

</div>

**CERTIFICATE OF SERVICE**

I, Adam S. Levine, M.D., J.D., hereby certify that on the date listed below, this document and any attached exhibits were filed with the Clerk of Court using the CM/ECF system which sent a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed a copy of the foregoing document and notice of electronic filing by first class mail to all non-CM/ECF participants.

**Respectfully submitted this 17th day of December 2012**

> /s/ Adam S. Levine
> Adam S. Levine, M.D., J.D.
> Florida Bar No. 78288
> The Florida Legal Advocacy Group of Tampa Bay
> 1180 Gulf Boulevard, Suite 303
> Clearwater, FL 33767
> (727) 512 – 1969 [Telephone]
> (866) 242 – 4946 [Facsimile]
> aslevine@msn.com [E-mail]
> Trial Counsel & Counsel for the Plaintiff